UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CRIMINAL ACTION NUMBER: 1:12CR-00012-JHM

UNITED STATES OF AMERICA                                         PLAINTIFF

v.

CHARLES STINSON
RALPH DOWELL
LOGSDON VALLEY OIL COMPANY, INC.                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Charles Stinson's motion to suppress evidence obtained in an illegal search [DN 50] and Defendant Ralph Dowell's motion to adopt Co-Defendant's motion [DN 54].

### I. BACKGROUND

Defendant Charles Stinson was the owner and operator of Logsdon Valley Oil Company, Inc. and Defendant Ralph Dowell was an employee of Stinson's oil production business. The Superseding Indictment alleges that between March 13, 2008 through July 18, 2012, Defendants Stinson and Dowell violated the Safe Drinking Water Act by improperly injecting produced water into a sinkhole without a permit. (Superseding Indictment, ¶ 20 [DN 20].) Produced water is described as fluids brought to the surface in connection with oil production and permits are required in order to inject and convey produced water into sinkholes in the Commonwealth of Kentucky. A tank battery is used to store produced water, and the operator of an oil and gas facility is required to register each tank battery with the Kentucky Department of Environmental Protection. See 401 K.A.R. 5:050 Section 4. Defendants Stinson and Dowell were indicted on charges of conspiracy to commit violations of an underground injection control program under 18 U.S.C. § 371, 42 U.S.C.

§ 300h-2(b)(2) and 40 C.F.R. § 2; and all Defendants were indicted on seven counts of violation of underground injection control program under 42 U.S.C. § 300h-2(b)(2) and 18 U.S.C. § 2.

Among several other overt acts, the Superseding Indictment alleges that on December 10, 2009, Defendants Stinson and Dowell improperly conveyed produced water into a sinkhole at the Guinn lease, permit number KYI0389, and on June 29, 2010, Defendants Stinson and Dowell improperly conveyed produced water into a sinkhole at the Carter-Cheney lease, permit KYI0590. Both the Carter Cheney lease and the Guinn lease had tank batteries on the facilities which were registered with the Kentucky Department of Environmental Protection. (Registrations [DN 52].) Discovery tendered by the United States revealed that a water sample was taken by the Kentucky Energy and Environment Cabinet's Division of Water at the Guinn lease on or about December 10, 2009 and a water sample was taken at the Carter-Cheney lease on or about June 29, 2010. (Superseding Indictment, ¶ 13 [DN 20].)

## II. DISCUSSION

Defendant Stinson states that the water samples taken at the Guinn lease and the Carter-Cheney lease were taken without a search warrant and the United States has not provided any evidence that Defendant Stinson consented to the samples being taken. Defendant Stinson filed this motion to suppress, with Defendant Dowell making a motion to adopt, arguing that the samples were seized in violation of the Fourth Amendment and the samples and test results stemming from the samples should be suppressed.

The Fourth Amendment protects an individual from unreasonable searches and seizures. Any evidence that stems from an unreasonable search or seizure must be suppressed. Wong Sun v. United States, 371 U.S. 471, 488 (1963). "Since the Supreme Court's decision in Katz v. United States, 389 U.S. 347 (1967), the touchstone of Fourth Amendment analysis 'has been the question whether a

person has a 'constitutionally protected reasonable expectation of privacy'." U.S. v. Rapanos, 115 F.3d 367, 374 (6th Cir. 1997) (quoting Oliver v. United States, 466 U.S. 170, 176 (1984)). Defendant Stinson acknowledges that the Supreme Court has held that because no legitimate expectation of privacy exists in open fields, the Government's intrusion into open fields without a search warrant is not an unreasonable search prohibited by the Fourth Amendment. Oliver, 466 U.S. 170. However, Defendant Stinson argues that the open fields doctrine should not be extended beyond observation searches, and the Kentucky Energy and Environment Cabinet's Division of Water inspectors should be required to obtain a warrant before actually seizing evidence. (Def.'s Mot. to Suppress, 2 [DN 50] (citing Rapanos, 115 F.3d at 372).) In response, the United States argues that "[b]ecause Defendant Stinson operates an oil and gas business that is highly regulated in the state of Kentucky, Stinson does not have a reasonable expectation of privacy." (U.S.' Resp. 1 [DN 51].) The United States contends that inspecting and taking water samples from oil and gas facilities are authorized under KRS 224.10-100(10) and 401 K.A.R. 5:090, and the Kentucky Department of Environmental Protection (KYDEP) may inspect and sample facilities that are involved in the improper disposal of waste. Furthermore, the United States argues that several other exceptions to the warrant requirement exist, such as open fields, abandoned property, and plain view.

      The United States argues that Defendant Stinson's oil and gas production facilities fall under an exception to the warrant requirement as it is a closely regulated industry, and because of the nature of the regulation, no reasonable expectation of privacy exists. See New York v. Burger, 482 U.S. 691 (1987); Donavan v. Dewey, 452 U.S. 594 (1981); United States v. Biswell, 406 U.S. 311 (1972); Colonnade Catering Corp. v. U.S., 397 U.S. 72 (1970). As stated previously, "the touchstone of Fourth Amendment analysis 'has been the question whether a person has a

'constitutionally protected reasonable expectation of privacy'." U.S. v. Rapanos, 115 F.3d 367, 374 (6th Cir. 1997). However, the Supreme Court has recognized that certain industries that are closely regulated by the government have no reasonable expectation of privacy. Burger, 482 U.S. at 700. The Colonnade-Biswell doctrine, as it has come to be called, allows for the warrantless inspection if three criteria are met. "First, there must be a 'substantial government interest that informs the regulatory scheme pursuant to which the inspection is made." Id. at 702. "Second the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" Id. (citing Donovan, 452 U.S. at 600 (In Donovan, the Supreme Court recognized that requiring mine inspectors to obtain a warrant before inspections would alert mine owners and frustrate the ability to detect and deter violations)). Lastly, "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." Id. at 703 (internal quotations omitted).

The Kentucky Department of Environmental Protection clearly has an interest in regulating the gas and oil industry in order to "[p]rovide for the prevention, abatement, and control of all water, land, and air pollution, including but not limited to that related to particulates, pesticides, gases, dust, vapors, noise, radiation, odor, nutrients, heated liquid, or other contaminants[.] KRS § 224.10-100(5) (2007). Similarly to the reasoning of the Supreme Court in Donovan, the Kentucky Department of Environmental Protection recognizes that a warrant requirement could frustrate effective enforcement of the Division of Water and the Division of Waste Management and impede their ability to detect violations. Lastly, in the case at present, it can not be said that the occurrence of

the warrantless inspections of the leases were "so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials." Donovan, 452 U.S. at 599. In Biswell, the Supreme Court determined that the time, place and scope of the inspection were limited with place appropriate restraints upon the discretion of the inspecting officers at vehicle dismantling businesses. 482 U.S. at 711. The officers in Biswell were allowed to inspect only during regular business hours, the inspections could be made only of vehicle-dismantling and related industries and the permissible scope of the searches was narrowly defined. Id. Under the Kentucky statutes and regulations, the inspections were permitted for "the purpose of investigating either actual or suspected sources of pollution or contamination or for the purpose of ascertaining compliance or noncompliance . . . ." KRS § 224.10-100(10). Furthermore, the inspections could take place during normal workdays, and only could be conducted outside of regular hours when the department deemed the inspections necessary. 401 KAR 40:020, Section 2(4). The inspections were limited to solid waste and hazardous waste sites, and facilities operating in accordance with the provisions of the Kentucky Department of Environmental Protection, KRS Chapter 224.

      As Defendant Stinson had previous violations before the inspections and seizure of the water samples at issue, as well as the highly regulated nature of the oil and gas industry and required compliance with the Kentucky Department of Environmental Protection, the Court finds that Defendant Stinson did not have constitutionally protected reasonable expectation of privacy in the produced water that was sampled. Therefore, Defendant Stinson's motion to suppress is denied.

      Defendant Dowell has made a motion to adopt any and all motions filed by co-defendant Stinson. [DN 55] The Court grants this motion. However, since it has denied Defendant Stinson's motion to suppress, the Court does not need to address the United State's arguments regarding

Defendant Dowell's standing to challenge the water samples.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's motion to suppress [DN 50] is **DENIED**. Defendant Dowell's motion to adopt co-defendant's motions [DN 54] is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

March 25, 2013

cc: counsel of record