# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

CRIMINAL ACTION NO. 1:12CR-00012-JHM

UNITED STATES OF AMERICA                                               PLAINTIFF

VS.

CHARLES STINSON
RALPH DOWELL
LOGSDON VALLEY OIL COMPANY, INC.                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the United States to exclude the testimony of defense expert, William M. Mitchell [DN 63]. Fully briefed, the matter is ripe for decision.

## I. BACKGROUND

On March 14, 2012, Charles Stinson, Ralph Dowell, and Logsdon Valley Oil Company, Inc., were indicted for conspiring to commit violations of the underground injection control program and substantive violations of the underground injection control program beginning in March of 2008. Stinson is the owner and operator of the Logsdon Valley Oil Company, Inc., and operates several oil wells in Hart County, Kentucky. Ralph Dowell was an employee of Stinson's oil production business. The indictment alleges that the Defendants injected fluid into sinkholes at various leases without permits in violation of the Safe Drinking Water Act, 42 U.S.C. § 300h-2(b)(2) and 40 C.F.R. § 144.11.

The Defendants named William Mitchell of Mitchell Geological Associates as an expert in this case. In his nine-page report, Mitchell opines that the Total Dissolved Solids ("TDS") levels at many of the sites in question in the relevant time frame represent TDS readings consistent with the definition of protected water, i.e. fresh water. Mitchell further criticizes the EPA investigation

in this matter noting EPA employees and its contractors violated EPA protocol with respect to site entry, taking of statements, and documentation of evidence. Further, Mitchell notes that "documents . . . show no evidence that the facility owner's consent (required) was obtained for the majority of the site inspections prior to site entry for inspection purposes." (Mitchell Report at 1.)

The United States moves in limine to exclude the testimony of William Mitchell for the following reasons: (1) the disclosure fails to satisfy Rule 16(b)(1)(C) because it fails to specify Mitchell's proposed opinions and also fails to specify the bases for those opinions; (2) testimony regarding EPA permitted well depth and amounts of TDS in protected water is entirely irrelevant to decide whether the defendants injected produced water into a sinkhole without a permit; (3) the proposed testimony is more prejudicial than probative because it would serve to confuse the issues; and (4) the proposed testimony is only being introduced to encourage jury nullification.

In response to the motion in limine, Defendants argue that Mitchell's expert opinion concerning the meaning of the TDS levels is relevant and helpful to the jury. Additionally, Defendants argue that Mitchell may properly testify regarding the problems with the investigation and violations of EPA policy and regulations by EPA personnel.

## II. STANDARD

The United States seeks to exclude the testimony of Mitchell alleging in part that his testimony does not meet the standards of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the

2

facts of the case.

Under Rule 702, the trial judge acts as gatekeepers to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir.2006)(citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION

**A. Relevance of Mitchell's Expert Opinions Regarding Well Depth and TDS Levels**

Under Daubert, the court must determine whether the proposed expert testimony is relevant, i.e. whether the testimony will assist the trier of fact. Daubert, 509 U.S. at 591-592. The rules

3

define relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The relevance requirement ensures "that there is a 'fit' between the testimony and the issue to be resolved by the trial." Greenwell v. Boatwright, 184 F.3d 492, 496 (6th Cir. 1999).

*1. EPA Permitted Well Depth*

The United States seeks to exclude the testimony of Mitchell regarding his criticism of the EPA's permitted well depth for the zone in question. After considering Defendants' response, it does not appear that Defendants intend to introduce any criticisms held by Mitchell regarding the EPA permitted well depth and the propriety of issuing injection well permits for the zone in question.

*2. Fresh Water and Produced Water*

The United States seeks to exclude Mitchell's expert opinion regarding TDS levels at the sites in question, including his opinion that many of the TDS levels are consistent with protected water. The United States argues that the amount of TDS in protected water is entirely irrelevant in deciding whether the Defendants injected produced water into a sinkhole without a permit. The United States maintains that it is irrelevant *what type* of fluid is injected under the UIC program and that a permit must be obtained to inject produced water or any fluid.[1] According to the United States,

---

[1] See 40 C.F.R. § 144.11 provides in part that "[a]ny underground injection, except into a well authorized by rule or except as authorized by permit issued under the UIC program, is prohibited." The Safe Drinking Water Act, 42 U.S.C. § 300h(d)(1)(A) defines the term "underground injection" as the "subsurface emplacement of fluids by well injection." (Superseding Indictment ¶ 4.) Fluid is defined as "any material or substance which flows or moves whether in a semisolid, liquid, sludge, gas, or any other form or state." 40 C.F.R. § 144.3.

4

the question for the jury to decide is whether the Defendants injected any fluid into a sinkhole without a permit, and, as a result, Mitchell's expert opinion regarding TDS levels should be excluded. The Court disagrees.

Count 1 of the Superseding Indictment charges the Defendants with knowingly and willfully conspiring and agreeing with each other "to willfully violate a requirement of an applicable underground injection control program by injecting *produced water* into a sinkhole and well without a permit, in violation of the Safe Drinking Water Act, Title 42, United States Code, Section 300h-2(b)(2) and Title 40, Code of Federal Regulations, Section 144.11." (Superseding Indictment ¶ 11(emphasis added).) The remaining seven counts charges that the Defendants, aided and abetted by each other, "did willfully inject fluids into a sinkhole that was not permitted and authorized by rule for underground injection" at certain leases. (See, e.g. at ¶ 15.)

Given the language of Count 1, the United States must prove that Stinson and Dowell knowingly and willfully conveyed produced water into a sinkhole. Mitchell's testimony that the TDS levels at the sites in question are consistent with protected water, meaning fresh water, is relevant to the jury's consideration of whether the liquid is produced water as charged in Count 1. Mitchell's testimony is also offered to rebut the opinions of two of the United States' expert witnesses, Greg Abner and Jim Hoban. As noted by the Defendants, the United States intends to call Greg Abner from the Kentucky Department of Environmental Protection as an expert witness who will opine that "[f]luid discharged into Charles Stinson #6 well on July 18, 2012 contained high levels of chlorides and is produced fluid . . . ." Abner is being called to discuss the high TDS levels and to opine they are consistent with produced water. Similarly, the United States also disclosed Jim Hoban, a chemist, who will opine as to the chemical analysis he conducted on fluid samples

5

from the Grover Jaggers lease on June 2012. Thus, Mitchell's testimony is relevant to rebut the testimony of the United States' expert witnesses regarding TDS levels, produced water, and chemical analysis of fluid samples taken from certain leases. Finally, Mitchell's opinion regarding the TDS levels could also be relevant in determining whether an alleged violation was a willful violation or an accidental violation.

For these reasons, the Court finds that the expert testimony of Mitchell related to the TDS levels is relevant and helpful to the jury.

### B. Mitchell's Opinions Regarding Violations of EPA Policies and Regulations

*1. Consent*

Throughout Mitchell's report, he charges the EPA with violating Stinson's constitutional rights by failing to obtain Stinson's consent prior to inspection of the property and seizure of the water samples. In response to the motion in limine, the Defendants concede that Mitchell cannot offer a legal conclusion that Stinson's and Dowell's constitutional rights were violated. As a result, with respect to this argument, the United States motion in limine is granted.

*2. Testimony Regarding Proper Techniques and EPA Agent's Violation of Policies and Regulations*

The United States seeks to exclude the testimony of Mitchell regarding his opinion that the EPA conducted a poorly designed site investigation to support the allegations against the Defendants. While Mitchell claims the agents and investigators failed to follow EPA protocol, the United States argues that Mitchell fails to disclose what protocol he relied upon to arrive at that opinion. According to the United States, Defendants' disclosure is insufficient and fails to satisfy Fed. R. Crim. P. 16(b)(1)(C) because it fails to specify Mitchell's proposed opinions and the basis

for his opinions.

While conceding that Mitchell cannot offer a legal conclusion that Stinson and Dowell's constitutional rights were violated, Defendants argue that Mitchell should be permitted to testify regarding the manner by which the investigation was conducted including proper techniques for site investigation, EPA policies concerning site inspections, and about how EPA regulations were violated. Defendants maintain that the quality and nature of a criminal investigation is often questioned and is always relevant in a criminal investigation. In the present case, Defendants argue that it is important in the jury consideration as to how much credibility and emphasis they should put on the agent's testimony. According to Defendants, to limit their ability to question the manner and methods of the investigation would effectively prohibit the Defendants from employing a meaningful defense.

"Although the jury will not be called upon to directly assess the competence of the Government's investigation, evidence tending to show that the Government failed to follow up on fruitful leads, misinterpreted information in a material way, or employed faulty investigative techniques, could be probative of whether the Government has made its case against Defendants." See United States v. Poulsen, 543 F. Supp. 2d 809, 811 (S.D. Ohio. 2008). For instance with respect to the Jaggers lease, Mitchell suggests that the data presented demonstrates that the release was primarily crude oil and not produced formation water and that the discharge did not come from a pipe but traveled from another location. This evidence clearly challenges the findings and conclusions of the United States' investigation, and therefore, the evidence would be relevant. Likewise, Mitchell identifies several criticisms of the investigation, including the location of the collected soil samples, failure to collect water samples from certain areas, the utilization of South

Louisiana crude oil instead of Kentucky crude oil, and the specific analysis utilized to evaluate the released material. This information is also relevant under Rule 401.

The Court finds that Mitchell's opinions based on evidence relating to the competence of the investigation, such as that identified by the Court in United States v. Poulsen, are relevant and permissible. However, before Mitchell is permitted to testify that the agents violated EPA protocols or policies in their investigation of the alleged violations, Mitchell must identify the specific protocols or policies in a supplemental expert report submitted to the United States.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the United States' Motion to Exclude Testimony of Defendants' Expert William Mitchell [DN 63] is **GRANTED IN PART.** The testimony of Mitchell is limited to the extent set forth in this Opinion. The remainder of the motion in limine is **DENIED.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

August 21, 2013